JACKSON v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

1. **Damages:** STATUTE: SECTION 2122. Section 2122 of the Revised Statutes only authorizes an action for damages where the death of the injured party was caused by the wrongful act of the party sued, and an action cannot be maintained where the death was only hastened by such wrongful act.

2. **Construction:** REVISED STATUTES, SECTION 2122. Section 2122 of the Revised Statutes is in derogation of the common law and should receive a reasonably strict construction.

3. **Railroad:** NEGLIGENCE: DUTY OF CONDUCTOR TO TRANSPORT PRISONER. Where one assuming to act as an officer, represents himself as such to the conductor of a railroad train, and offers to put upon the train as a passenger a person whom he claims to have arrested for crime, the conductor is not required to inquire into the cause of the arrest and the authority of the officer, but is justified in taking such prisoner in good faith upon the train and is guilty of no wrongful act in so receiving and transporting him.

4. **Master and Servant:** MASTER NOT LIABLE FOR CRIMINAL ACT OF SERVANT: TRESPASS: RAILROADS: CONDUCTOR. The master is not

liable for the criminal acts of his servant, not authorized or sanctioned by him, nor for his acts of wilful and malicious trespass. If a conductor knowingly and wilfully participates in the act of taking and transporting upon the cars, against his will, one whom he had no right to receive, he, and not the company, will be liable for his acts.

*Appeal from Butler Circuit Court.*—Hon. R. P. Owen, Judge.

Reversed.

*Geo. H. Benton* for appellant.

(1) There is no substantial conflict in the evidence in this case, and the court should, as a question of law, have declared to the jury that the plaintiff could not recover, as requested to do by defendant at the close of plaintiff's evidence and of the whole case. *Powell v. Mo. Pac. Ry. Co.*, 76 Mo. 80 ; *Henry v. St. Louis, K. C. & N. Ry. Co.*, 76 Mo. 293 ; *Mali v. Lord*, 39 N. Y. 381 ; *Edwards v. London, etc., Ry. Co.*, L. R. 5 C. P. 445 ; *Allen v. London, etc., Ry. Co.*, L. R. 6 Q. B. 65 ; *Poulton v. London, etc., Ry. Co.*, L. R. 2 Q. B. 534 ; *Porter v. Chicago, etc., Ry. Co.*, 41 Iowa, 358 ; *Wright v. Wilcox*, 19 Wend. 343 ; *Little Miami River v. Wetmore*, 19 Ohio, 110 ; *Snyder v. Ry. Co.*, 60 Mo. 413 ; *Cousins v. H. & St. J. Ry. Co.*, 66 Mo. 572 ; *Vinton v. Middlesex Ry. Co.*, 11 Allen, 304 ; Thompson on Carriers, 1, 10 ; *Marshal v. Ry. Co.*, 78 Mo. 616 ; *Frederick v. H. & H. & O. R. R. R. Co.*, 37 Mich. 342 ; *Hall v. Memphis Ry. Co.*, 9 Am. & Eng. Ry. Cases, 348 ; *Yorton v. M. L. S. & W. Ry. Co.*, 6 Id. 322; 7 Mass. 523 ; Dwarris on Statutes, 193 ; *Beauchamp v. Mining Co.*, 50 Mich. 163 ; s. c., 4. Am. Rep. 30 ; *Vawter v. Railroad Co.*, 84 Mo. 679 ; *Clemens v. Railroad Co.*, 53 Mo. 366. (2) The petition does not state facts sufficient to constitute a cause of action. See authorities, *supra*. (3) The court erred in excluding proper testimony offered by

defendant and admitting evidence introduced by plain-
tiff, cases cited, *supra*. (4) The court erred in giving
instructions for plaintiff and refusing instructions asked
by defendant. See cases cited under first point.
(5) The verdict is excessive and contrary to defendant's
fifth instruction given by the court. *Jones v. Han-
nover*, 55 Mo. 462: *Wagner v. Dette*, 2 Mo. App.
254; 2 Thompson on Neg. 1289; *State v. Baltimore
Ry. Co.*, 24 Md. 84; *Blake v. Midland Ry. Co.*, 18
Q. B. 93; *Chicago v. Major*, 18 Ill. 349; *Penn. Ry. Co.
v. McClosky*, 23 Pa. St. 526.

*Chapman & Kerr* for respondent.

HENRY, C. J.—This suit was instituted in the Butler
circuit court, by plaintiff, to recover damages for the
death of her husband, alleged to have been occasioned
by defendant's wrongful act, in receiving her husband
on its train of cars, against his will and the protest of
plaintiff, while he was in a mortally wounded condition.
On a trial she had a judgment for $500, from which this
appeal was taken. The cause was tried on an amended
petition, to which a demurrer having been overruled, de-
fendant filed an answer, alleging, in addition to a general
denial, that the deceased was a fugitive from justice, and
had been arrested by an officer and was wounded in the
effort to arrest him. That the officer brought him to the
town of Dexter, and procured a ticket for him and con-
veyed him, as a prisoner, on defendant's train to Clay
county, in the state of Arkansas. That defendant re-
ceived him on its train, and, without any negligence,
carried him to Clay county, Arkansas. That his death
was caused by the severe wound inflicted upon him, as
aforesaid.

The following is substantially the evidence adduced
on the trial: Sol. G. Kitchen testified, that he saw
Andrew Jackson, the deceased, at the depot in Dexter,

on the 8th or 9th of August, 1879. He was seriously wounded. Two or three hours after he was brought to the depot, the train arrived, and, as soon as it stopped, witness met Mr. Kelly, the conductor, on the platform, and told him the condition of Jackson, and that there would be an effort to put him on the train, and appealed to him, in behalf of Jackson and his wife, not to allow it, because they had no authority to do so. That he had called for their authority, and they refused to produce any. Three men appeared to have charge of him. After the train had been at the depot some four or five minutes, they took hold of the pallet on which he was lying, and carried him up to the baggage car, gave him a·swing and threw him up into the baggage car.

Mr. Davidson testified that he saw Jackson at Poplar Bluff, at the depot lying on the platform, wounded ; understood, at the time, that Jackson was taken forcibly, against his will, and witness was applied to by some persons to arrest the parties for kidnapping. Witness was prosecuting attorney of the county at that time. Barton Turner, sheriff of Butler county at the time, saw Jackson at the depot wounded ; saw him put on the train. He seemed to go unwillingly. Said he would like to be retained there, in Butler county, on some charges against him there. Heard Chapman talking to Barham who had Jackson in charge, and the conductor was there part of the time, *remonstrating against taking him and asking by what authority* they were taking him. E. R. Milton also saw Jackson lying in the car, and heard him say: "Boys are you going to let them take me?" and the man in charge said : "They can't help themselves." It was also proved that Jackson died at Boydsville, Arkansas, on the twelfth or fifteenth of August, 1879, and a physician testified that the probable effect of a gun-shot wound in the left breast and abdomen, and thigh, would result in death. It would be hazardous to transport him any distance.

An instruction, in the nature of a demurrer to the evidence, was overruled by the court, and defendant introduced as a witness Barham, who arrested Jackson. He testified to the arrest and wounding of Jackson, in Stoddard county Missouri.   After the train pulled out from Dexter, and had gone seventy-five or eighty yards, the conductor, Kelly, came to witness and said; "I can't carry that man."   Witness enquired why, stating that he, witness, had money to pay his fare, *was an officer and had his papers.  Thinks he showed him his badge, was not positive, but knew he had it.*   That portion, in italics, was excluded but should have been admitted.   Conductor Kelly pulled the bell rope and the train stopped, but again went on.   None of the men who assisted in putting Jackson on the train were connected with the train. Witness had no writ.   Badge he showed Kelly was one witness had from the secret service company.   He also had a badge, as city marshal of Malden, Mo.

Kelly, the conductor, testified that as he stepped from the rear car of the train, he met Col. Kitchen who said they were taking off a party against his will, and he had doubts whether the officers had the proper papers. Witness told Kitchen if the party was an officer, he could do nothing, but would give him plenty of time to get an officer to have him taken off, if there was anything wrong. Witness said he did not see Jackson at all.   As the train started, he stepped onto the baggage car, saw the man lying down and pulled the bell rope.   Barham then said: "I am the officer and have him in charge."   Threw back his coat and showed his badge as marshal, and stated that he had the papers.   Witness then started the train again.

The court for plaintiff instructed the jury as follows:

"1. If the jury believe from the evidence that plaintiff was the wife of Andrew Jackson; that defendant, its agent, officers and employes took and carried the said Andrew Jackson upon one of its cars from the town of

Dexter, Missouri, by way of Poplar Bluff, Missouri, into Clay county, Arkansas, against his will and consent of himself and plaintiff, and that he was dangerously sick and wounded at the time of being so taken; that his condition was known to defendant's employes and agents who were conducting and managing said car and train; that the conductor in charge of said train was not only informed of his condition and knew that he was being so taken against his will and the consent of plaintiff, and that he was so taken and so transported from said town of Dexter to said Clay county, thereby causing or *hasten-ing* his death, they should find for plaintiff any sum, not exceeding five thousand dollars, to which plaintiff has shown herself entitled; and it is no excuse or mitigation of defendant's liability that others aided and assisted defendant, its employes and agents in so taking and removing plaintiff's said husband from said town of Dexter to said Clay county as stated in her petition."

"2. The court further instructs the jury that, if defendant had any authority of law for taking and removing plaintiff's husband, that after plaintiff had introduced evidence tending to prove the facts alleged in her petition sufficient to entitle her to recover, that defendent must then establish sufficient on its part to justify such taking and removal."

The following were given on defendant's request:

"2. The court instructs the jury that notwithstanding you may believe from the evidence that defendant's conductor was guilty of a wrongful act in taking deceased upon defendant's train in question, under the circumstances detailed in evidence, yet you must find a verdict for the defendant unless you believe further from the evidence that said wrongful act was the cause of the death of Andrew Jackson."

"5. If you find a verdict for the plaintiff in this case, you are instructed that the measure of damages will be what you find from the evidence was the value of

the life of Andrew Jackson to the plaintiff in his wounded condition before he was received on defendant's train."

The following asked by defendant were refused :

"1.   If you believe from the evidence that W. T. Barham, at the time and place in question represented to defendant's conductor, that he, the said Barham, was an officer in charge of deceased as a prisoner, and that said conductor believed the same and acted in good faith, then the court instructs you that said representation was a sufficient justification for said conductor, and that the taking of said Andrew Jackson upon defendant's train under the circumstances supposed in this instruction was not a wrongful act, and you must find a verdict for the defendant."

"4.   If the jury believe from the evidence that the gun-shot or pistol wounds inflicted on Andrew Jackson were necessarily fatal and it was a wrongful act for defendant's employes to receive Jackson on the train at the time and place in question in his wounded condition, and that said wrongful act only hastened the death of Jackson and was not the cause of the same, you must find a verdict for the defendant."

The above instructions the court refused to give to the jury, and the defendant at the time excepted.

This is a peculiar case, and the first of its kind in this state, and, if another like it has ever found its way into the reports of causes decided elsewhere, I have not been able to find it.   Respondent has filed no brief. It is a suit under section 2122, Revised Statutes, which provides that: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the injured party to maintain an action and recover damages in respect thereof, then   *   *   *   the person who, or the corporation which would have been liable, if death had not ensued, shall

be liable to an action for damages, notwithstanding the death of the person injured."

This statute has been generally accepted as vigorous enough, but the court, in its first instruction for plaintiff, added materially to its provisions. The statute gives the action, if the wrongful act of the party sued *caused the death*, and the first instruction for plaintiff superadded, "or hastened" his death. It is a statute in derogation of the common law and must receive a reasonably strict construction.

The second of defendant's refused instructions should have been given. There was abundant evidence upon which to predicate it, and to hold the defendant liable, if the jury found the facts hypothecated in that instruction would require the conductor, when one assuming to act as an officer offers to put upon the cars, as a passenger, a person whom he claims to have arrested for crime, to stop the train, and inquire into the cause of, and authority for, the arrest. There was no proof in this case that the conductor, or any of the train men, assisted or in any manner participated in, or countenanced the act of the three men who lifted Jackson into the baggage car. It is also a fact, testified to by the sheriff of the county in which it occurred, that the conductor remonstrated with Barham against carrying Jackson off. The evidence tends to prove that, until the train had started, he did not know that Jackson was aboard, and that, when he discovered him in the baggage car, he said he could not carry him, and stopped the train, and was then told by Barham that he was an officer who had Jackson under arrest, and showed him his badge of office, and told him he had papers authorizing the arrest. If the jury had been properly instructed and found the above facts, they should, and no doubt would, have found a verdict for the defendant.

The conductor told Col. Kitchen that he would hold the train long enough for them to get an officer to pre-

vent Barham and his associates from taking Jackson off. The sheriff and the prosecuting attorney of the county were present, and to the sheriff Jackson appealed to hold him in his county on charges against him there. Under all the circumstances, the conductor acted with as much prudence and circumspection as could be required. To exact more would be to require him to exercise judicial functions and pass upon the case of every prisoner trans- ported over his road to the penitentiary by the sheriffs of the counties through which the road runs. The second of defendant's refused instructions should have been given, for the same reason that the first given for plaintiff should have been refused, viz.: that the statute does not give an action to the representative, unless the wrongful act complained of occasioned the death of the party.

We may also add, that if a conductor knowingly and wilfully participates in the act of taking and transport- ing upon the cars, against his will, one whom he had no right to receive on the cars for transportation, he and not the company, would be liable for his conduct. The master is not liable for the criminal acts of his servant, not authorized or sanctioned by him, nor "for his acts of wilful and malicious trespass." *McKeon v. Citizens Ry. Co.*, 42 Mo. 83 ; Story on Agency, section 456.

There are some exceedingly nice distinctions in the books on this subject, which we shall not notice, because we think it clear enough that, if the conductor of a rail- road train goes out of the train, and forces one into a passenger car and carries him off, the act would not be within the scope of his employment. The judgment is reversed and the cause remanded.