DANIEL C. WHITEAKER v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., Appellants.

In Banc, November 24, 1913.

1. **REMOVAL OF CAUSES: Diverse Citizenship.** When a plaintiff sues both a nonresident railroad company and its resident conductor, on a liability that on the face of his petition appears to be joint, the cause is not removable from the State to the Federal court on the petition of the railroad company on the ground of diverse citizenship. The presence of the resident defendant removes the case from the intendment of the Federal statute.

2. ———: ———: **Joining Conductor as Defendant: Good Faith.** It is for the plaintiff, and not defendant railroad company, to elect who should be sued on a joint liability sounding in tort. If the petition states a joint liability, which on the petition's face is not separable, an inquiry into the secret motives of plaintiff in joining both defendants and

seeking a recovery from both, is immaterial in determining either jurisdiction or liability.

3. —————: —————: **Dependent on Allegations.** The question of whether or not a cause should be removed to the Federal court on the petition of a nonresident joined as a codefendant with a resident citizen, harks back to the allegations of plaintiff's petition. Removability then becomes a question of law, which it is the duty and right of the State court to determine in the first instance.

4. **DEMURRER TO EVIDENCE: Overruled: Renewed at Close of Case.** Where defendant puts in a demurrer to plaintiff's evidence at the close of his case, and it being overruled he does not stand thereon, but thereafter puts in his own evidence, he thereby so far elects to waive his demurrer as to have the case adjudged by the whole evidence, precisely as if on an instruction at the close of the case to direct a verdict for him.

5. **SUFFICIENCY OF EVIDENCE: Appellate Practice.** Where plaintiff has a verdict in a law case, the appellate court, in ruling a demurrer to the evidence (or a mandatory instruction filling the office of one), accepts plaintiff's evidence as true, whether contradicted or not by defendant's evidence (so long as it is not impossible as opposed to the conceded physics of the case, or as beyond all reason, or where perjury is patent); and they also assume defendant's testimony to be false, where contradictory of plaintiff's.

6. **JURY: Importance and Province.** The invention of a jury to weigh and determine the credit due to human testimony, and to settle facts in doubt or dispute, in a trial at law, is to be rightly taken as one of the splendid achievements of civilized man. The average judgment of twelve jurymen of average sense, drawn from all the walks of life and impartially selected, is more likely to reach a practical result in sifting, weighing, rejecting and reconciling proof, and in deciding facts, than is that of the trained and technical reasoner and specialist, whose mind runs in the groove of artificial analysis and logic; for, men do not usually get into trouble through logical processes, and logicians cannot always get them out of it.

7. **RIDING ON FREIGHT TRAIN: Kicked Off.** Plaintiff, a country youth humbly bred, seventeen years of age, had never before ridden on a train. The train was a "through freight" from Lathrop to Cameron, that did not stop at an intermediate station named Turney, and usually did not carry passengers. The testimony in behalf of plaintiff tended to prove that at the eventide on July 20th, on the platform of the depot at Lathrop, he approached a trainman and asked if he could

ride to Cameron on the freight train, then at the depot; that getting permission, he climbed the ladder to the top of a box car, and seated himself, his feet projecting over the edge; that shortly after the train started a brakeman came to him, and, conversing with him, collected twenty-five cents for his fare to Cameron, and then went on to the head of the train; that just as the train got to Turney, the conductor of the train, who is a codefendant with the railroad company, came out of the cupola of the caboose, approached him with a lantern, and with a vile epithet inquired what plaintiff was doing there, and thereupon kicked him violently, in the small of the back, off of the train, and in his fall he received the injuries for which he sues. Defendant's testimony, if true, shows the conductor was not on the top of the train during the trip; but a brother of plaintiff testified that after the accident he accosted the conductor and said, "You are the fellow that kicked my brother off down here by Turney," to which the conductor replied, "No, I didn't kick him off, I pretended I was going to kick him off and he jumped off." *Held*, that the judgment for plaintiff cannot be reversed on the ground of insufficient evidence, although that for defendants is flatly contradictory of plaintiff's and if the verdict had been for them no fault could have been found with it.

*Held*, by WOODSON, J., dissenting, that the plaintiff was a trespasser, and the train being a freight, upon which passengers were not usually received, the company could not have anticipated that the conductor would have kicked plaintiff from his train, and the conductor was not acting within the scope of his authority, but his acts were those of a criminal, for which the company should not be punished.

8. **NEGLIGENCE: Of Servant: Liability of Master.** Under the maxim *respondeat superior*, the master must answer in certain circumstances for the wrongful act of his servant precisely as the principal must answer for those of his agent. The general rule is that the maxim applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, willfully and maliciously, or even contrary to his orders and criminally in some instances. But the master is not liable when his servant was pursuing his own ends for his own purposes, and not the master's, and in doing so committed a wrong.

9. ———: ———: ———: **Kicking Traveler off Train.** A railroad company is liable to a traveller on its freight train who was kicked off of the train by its conductor who was not acting for himself for private ends or otherwise than about his duties to rid the train of a trespasser,

*Held,* by WOODSON, J., dissenting, that the conductor in kicking a trespasser from the top of a freight train is' not acting within the scope of his employment, but criminally, and the railroad company is not liable for the consequent injuries.

10. **ERRONEOUS TESTIMONY: No Specific Assignment.** The duty is on appellant to point out specifically any error in the admission or rejection of expert testimony.

11. **NEGLIGENCE: Instruction: To Find Against Both Tortfeasors.** An instruction telling the jury that if plaintiff got upon defendant railroad company's train, and the other defendant, its conductor, in the line of his duties to said company, kicked, forced and ejected plaintiff from said train, whereby he was injured, then the jury should return a verdict against both defendants, is not erroneous. If they found the facts constituting the hypothesis, both defendants were guilty. And a body of instructions which do not require the jury to find against both defendants unless both were liable, are not erroneous.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*Paul E. Walker, Luther Burnes, E. C. Hall* and *M. A. Low* for appellants.

(1) The trial court had jurisdiction of neither the parties nor the subject-matter of the action, and was without power to render a binding judgment therein. Stone v. South Carolina, 117 U. S. 432; Carson v. Hyatt, 118 U. S. 279; Railroad v. Dunn, 122 U. S. 513; Crehore v. Railroad, 131 U. S. 240; Railroad v. Wangelin, 132 U. S. 599; Railroad v. Daughtry, 138 U. S. 298; Railroad v. Herman, 187 U. S. 63; Traction Co. v. Mining Co., 196 U. S. 239; Railroad v. McCabe, 213 U. S. 207; Railroad v. Eastin, 214 U. S. 153; Railroad v. Stone, 70 Kan. 708; Hickman v. Railroad, 151 Mo. 644; Bank v. Fritzlen, 75 Kan. 479; Donovan v. Wells, Fargo & Co., 169 Fed. 363; Kelly v. Railroad, 122 Fed. 286; Arapahoe Co. v. Railroad, 4 Dill. 277; Bank v. Fritzlen, 135 Fed. 650; Dishon v. Railroad, 113 Fed.

471; Wecker v. Enameling & Stamping Co.; 204 U. S. 176; Railroad v. Thompson, 200 U. S. 206; Railroad v. Bohon, 200 U. S. 221; Winston v. Railroad, 111 Ky. 954; Railroad v. Sheegog, 215 U. S. 308. (2). The court erred in refusing to sustain the demurrer to the evidence for the respondent; and in refusing to direct the jury to return a verdict in favor of the railway company. Clark & Skyles on Law of Agency, sec. 494; Wood on Master & Servant, p. 59, sec. 307; Howe v. New March, 12 Allen, 49; McManus v. Crickett, 1 East, 106; Croft v. Allison, 4 B. & Ald. 590; Stevens v. Woodward, 44 L. T. (N. S.) 153; Railioad v. Baum, 26 Ind. 72; Marion v. Railroad, 59 Iowa, 428; Tel. Co. v. Mullins, 44 Neb. 732; Mott v. Ice Co., 73 N. Y. 543; Clancy v. Barker, 131 Fed. 161; Coal & Iron Co. v. Barrie, 179 Fed. 50; Davenport v. Railroad, 72 S. C. 205; Cobb v. Railroad, 37 S. C. 194; Brown v. Ice Co., 178 Mass. 108; Obertoni v. Railroad, 186 Mass. 481; Sullivan v. Railroad, 115 Ky. 447; Smith v. Railroad, 78 Hun, 524; Berry v. Railroad, 188 Mass. 536; Everingham v. Railroad, 148 Iowa, 662; Railroad v. Robinson, 95 Ark. 39; Grattan v. Suedmeyer, 144 Mo. App. 719; Bowen v. Railroad, 136 Fed. 306; Turley v. Railroad, 70 N. H. 348; Sweeden v. Improvement Co., 93 Ark. 397; Mirick v. Suchy, 74 Kan. 715; 26 Cyc. 1526; Girvin v. Railroad, 166 N. Y. 289; Miller v. Wanamaker, 111 N. Y. Supp. 786; Bowen v. Railroad, 136 Fed. 306; Daniel v. Railroad, 136 N. C. 517; Candiff v. Railroad, 42 La. Ann. 477; Railroad v. Routt, 25 Ky. L. R. 887; Georgia R. & B. Co. v. Wood, 94 Ga. 124; Couchin v. Railroad, 13 Ariz. 259; Hudson v. Railroad, 16 Kan. 470; Sachrowitz v. Railroad, 37 Kan. 212; Crelly v. Tel. Co., 84 Kan. 19; Berryman v. Railroad, 228 Pa. St. 621; Waaler v. Railroad, 18 S. D. 420; Railroad v. Yarbrough, 7 Am. & Eng. R. Cas. (N. S.) 733; Stephenson v. Railroad, 93 Cal. 558; Golden v. Newbrand, 52 Iowa, 61; Davis v. Houghtelin, 33 Neb. 582; Fairbanks v. Warehouse Co., 189 Mass.

419; Railroad v. Latham, 72 Miss. 32; Mitchell v. Cross-weller, 13 C. B. 236; McFarlan v. Railroad, 199 Pa. St. 408; Railroad v. Cooper, 88 Tex. 609; Railroad v. Morris, 121 Ga. 484; Roberts v. Railroad, 143 N. C. 176; Wallace v. Casey, 116 N. Y. Supp. 394; Electric Co. v. Hodges, 6 Ga. App. 470; Coal & Coke Co. v. Benson, 145 Ala. 664; Marlowe v. Bland, 154 N. C. 140; Johnson v. Fuel & Iron Co., 166 Ala. 534; Lytle v. News & Hotel Co., 27 Tex. Civ. App. 530; Doran v. Thomsen, 76 N. J. L. 754; Evers v. Krouse, 70 N. J. L. 653; Railroad v. Currie, 100 Tex. 136; Sinder v. Crawford, 47 Mo. App. 8; Voegeli v. Marble & Granite Co., 49 Mo. App. 643; Meade v. Railroad, 68 Mo. App. 92; Cousins v. Railroad, 66 Mo. 572; Shelby v. Railroad, 141 Mo. App. 514; Clark v. Folscroft, 67 Kan. 446; Douglas v. Stephens, 18 Mo. 362; Snyder v. Railroad, 60 Mo. 413; Jackson v. Railroad, 87 Mo. 422; Farber v. Railroad, 116 Mo. 81; Farber v. Railroad, 32 Mo. App. 378; Whitehead v. Railroad, 22 Mo. App. 60; Reilly v. Railroad, 94 Mo. 600; Stringer v. Railroad, 96 Mo. 299; Haehl v. Railroad, 119 Mo. 325; Walker v. Railroad, 121 Mo. 575; McKeon v. Railroad, 42 Mo. 79; Jones v. Packet Co., 43 Mo. App. 398; Hartman v. Muehlebach, 64 Mo. App. 575; Collette v. Rebori, 107 Mo. App. 711; Sherman v. Railroad, 72 Mo. 62; Drolsagen v. Railroad, 186 Mo. 258; Garretzen v. Duenckel, 50 Mo. 107. (3) The court erred in instructing the jury that in case they found for the plaintiff their verdict should be against both defendants, and in refusing the instruction requested by the appellants that a possible verdict need not be returned against both defendants.

*Pross T. Cross* and *John A. Cross* for respondent.

(1)   The case is not removable. Lanning v. Railroad, 196 Mo. 656; Stotler v. Railroad, 200 Mo. 118; Johnson v. Railroad, 203 Mo. 398; Railroad v. Schwy-

hart, 227 U. S. 184; Railroad v. Willard, 220 U. S. 413; Railroad v. Miller, 217 U. S. 209; Railroad v. Sheegog, 215 U. S. 308; Railroad v. Thompson, 200 U. S. 206; Railroad v. Bohon, 200 U. S. 221; Railroad v. Dixon, 179 U. S. 131; Railroad v. Carson, 194 U. S. 136; Powers v. Railroad, 169 U. S. 92. On removal, the only question to consider is whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it shown as the record stood when the removal was denied. Railroad v. Schwyhart, 227 U. S. 184. Under the petition and the law, unless plaintiff obtained a judgment against the servant defendant, he could not recover against the railway company, and plaintiff will be presumed to have joined the servant in good faith, and with the intent to get a joint judgment. McGinnis v. Railway, 200 Mo. 347. All doubts are to be resolved in favor of the jurisdiction of the State court. No presumption can be indulged in favor of the jurisdiction of the Federal court. Railroad v. Davidson, 157 U. S. 208; Hanrick v. Hanrick, 153 U. S. 192; Shaw v. Mineral Co., 145 U. S. 444. The State court is not ousted of jurisdiction unless the cause is properly removable. Federal jurisdiction cannot be inferred, but it must appear positively upon the face of the pleadings. Hanford v. Davis, 163 U. S. 273; Bors v. Preston, 111 U. S. 252; Mansfield v. Swan, 109 U. S. 278; Steamship Co. v. Tugman, 106 U. S. 118; Railroad v. Carson, 194 U. S. 138. The joint liability of the defendant under the pleadings is a matter of State law, and the decision of the highest court of the State will not be reversed by the Federal Supreme Court on the question of fraudulent joinder to prevent removal. Railroad v. Schwyhart, 227 U. S. 184. (2) Appellants' demurrer was properly overruled. The railway is liable for the wrongful acts of its conductor in kicking the boy from the train. The ejection of trespassers is within the line of the duties of the conductor. The

fact that the conductor performed the ejection in a cruel, malicious or criminal manner does not relieve the master. The question was one for the jury. Whitehead v. Railroad, 99 Mo. 264; Travers v. Railroad, 63 Mo. 421; Perkins v. Railroad, 55 Mo. 204; Farber v. Railroad, 139 Mo. 272; Farber v. Railroad, 116 Mo. 93; Merrielees v. Railroad, 163 Mo. 270; Haehl v. Railroad, 119 Mo. 325; Brill v. Eddy, 115 Mo. 596; Krueger v. Railroad, 94 Mo. App. 458; Krueger v. Railroad, 84 Mo. App. 358; Brenna v. Railroad, 72 Mo. App. 107; Canfield v. Railroad, 59 Mo. App. 354; Railroad v. Anderson, 82 Tex. 516; Railroad v. Bender, 24 Tex. Civ. App. 133; Ramsden v. Railroad, 104 Mass. 117; Schutz v. Railroad, 89 N. Y. 242; Sanders v. Railroad, 90 Ill. App. 582; Rowell v. Railroad, 68 N. H. 358; Barrett v. Railroad, 106 Minn. 51; Penas v. Railroad, 112 Minn. 203; Railroad v. Godkin, 104 Ga. 655; Railroad v. Kelly, 36 Kan. 655; Railroad v. Brown, 123 Ill. 162; Railroad v. West, 125 Ill. 320; Dillingham v. Russell, 73 Tex. 47; Railroad v. Hendricks, 48 Ark. 177; Dwinelle v. Railroad, 120 N. Y. 117; Perigo v. Railroad, 55 Iowa, 326; Rounds v. Railroad, 64 N. Y. 129; Railroad v. Savage, 110 Ind. 156; Railroad v. Vandiver, 42 Pa. St. 365; Railroad v. Marion, 64 Iowa, 568; Houston v. Railroad, 36 Tex. Civ. App. 165; Railroad v. Watson, 89 Ga. 110; Railroad v. Norris, 17 Ind. App. 189; Hamilton v. Railroad, 119 Iowa, 650; 33 Cyc. 863. (3) There was no error in the matter of instructions. Plaintiff's instruction number 1 set out facts, which, if found true, entitled plaintiff to a judgment against both defendants, and it was proper for the court to so instruct the jury. The master could not be liable without the servant. McGinnis v. Railroad, 200 Mo. 347. Furthermore, such error, if any there was, was invited by the appellants, and they will not now be permitted to complain. Reilly v. Railroad, 94 Mo. 611; Thorp v. Railroad, 89 Mo. 615; Holmes v.

Braidwood, 82 Mo. 610; Smith v. Culligan, 74 Mo. 288.

LAMM, C. J.—Suing for personal injuries in negligently ejecting plaintiff from defendant railway company's freight train, a jury returned him a verdict for $8500 in the Clinton Circuit Court. From a judgment following that verdict, both defendants appeal, raising four questions only, viz.:

*First*: The State court lost jurisdiction on the corporate defendant's filing a petition for removal to the Federal court, hence the judgment is *coram non judice*.

*Second*: There was reversible error in not sustaining a demurrer to the evidence at the close of plaintiff's case in chief, and, finally, in refusing to direct a verdict in favor of the corporate defendant at the close of the whole case.

*Third*: And similar error in admitting improper expert testimony.

*Fourth*: And similar error in instructing the jury that if they found for plaintiff to find against both defendants, and in refusing an instruction *contra*.

Many exceptions were taken *nisi*, but appellants have pretermitted a group of them on final submission, the gist of the remainder being set forth above. Of those questions in their order, any facts necessary to an understanding and disposition of either appearing in that connection.

I.  *Of jurisdiction.*

Appellants insist the trial court lost jurisdiction in this way: Prior to answering the corporate defendant filed its verified petition for a removal of the cause to the circuit court of the United States for the St. Joseph Division of the Western District of Missouri, and tendered its bond. On leave it filed affidavits sup-

**Removal of Cause: Diverse Citizenship.**

porting its petition for removal.   The petition for removal admits Whiteaker is a citizen and resident of Missouri and by implication that defendant Drake is the same, but alleges. the corporate defendant is a citizen and resident (not of Missouri, but) of Illinois and Iowa.   That the cause of action is a separable controversy ''which can be fully determined between plaintiff and your petitioner'' without the presence of Drake.   That Drake was joined for the sole and fraudulent purpose of preventing removal to the Federal court and defeating the jurisdiction of that court.   That plaintiff could not have had at the time of the institution of the suit any cause of action against Drake, who has no property out of which the judgment could be made, whereas, to the contrary, the petitioner is solvent and able to pay its debts.   Then follows this: ''According to the allegations in plaintiff's petition, any act of negligence on the part of the defendant Frank Drake alleged to have produced the injury to this plaintiff, was an act of this defendant, and, accordingly, this defendant is responsible and liable for the same.   That the plaintiff, when he instituted this action, did not have any reasonable hope, intention or expectation of recovering any judgment or collecting any money from the defendant Frank Drake, on account of the accident or injuries to the plaintiff mentioned in the petition.''

The affidavits filed in support were. to the effect that Drake was not on top of his train on the trip from Lathrop to Cameron and neither could attempt to, nor did eject any person from the train.

The petition for removal. was denied and defendants saved an exception.

The question is:   Did that application oust the jurisdiction of the State court, and hence, were all the proceedings without jurisdiction?

To determine that question heed must be given to the averments of plaintiff's petition anent his cause of action. It alleges, *inter alia,* that Drake, a resident and citizen of Missouri, was in the employ of his co-defendant as a conductor of one of its trains, and then in part as follows (quoting):

"Plaintiff further states that on or about the 20th day of July, 1905, at or near the crossing of the Atchison, Topeka & Santa Fe Railway Company at the town of Lathrop, Missouri, plaintiff, with the consent of, and under the direction, advice and invitation of the defendant railway company's servant, on and operating, and assisting to operate the hereinafter mentioned train, boarded and got upon one of defendant railway company's freight trains for the purpose of being transported thereon from said town of Lathrop to said railway company's station at Cameron, Missouri, and immediately after boarding said train plaintiff inquired of said servant of defendant railway company, who had so invited him onto said train, what the charge or fare would be for him to ride thereon to said station of Cameron, and said servant then and there informed plaintiff that the charge or fare would be twenty-five cents, and for plaintiff to pay him that sum and plaintiff did then and there pay said servant the said sum of twenty-five cents for the privilege of riding on said train to said station of Cameron; that afterwards, while plaintiff was so on said train and while said train was running at a high rate of speed and was near the station of Turney on said road, the defendant Drake, who was in the employ of said defendant, the Chicago, Rock Island & Pacific Railway Company, as a conductor, and as such was defendant railway company's conductor, agent and servant, on and in charge of said train, and while acting in the line of his duties to defendant railway company as such conductor and agent, and in the course of his employment, approached plaintiff (who was then sitting

on the top of one of the cars in said train) and wrong-fully and unlawfully, and with great and unusual and unnecessary force and violence, and in an improper and wrongful manner, forced and ejected plaintiff from the top of said car and train to the ground, and wrong-fully and unlawfully kicked him therefrom, all while said train was running at said high rate of speed, and when it was dangerous and unsafe for plaintiff to have attempted to alight therefrom, and plaintiff was, by reason of said wrongful ejection and kicking from said train and all of the above, and without any fault on his part, thrown and made to fall to the ground below and greatly and permanently injured as herein-after set out; that all the aforesaid acts and conduct on the part of said Drake were done and performed while in the course of his employment by defendant rail-way company, and in the line of his duties to defend-ant railway company and as a part of his duties, and said defendant Drake was defendant railway com-pany's agent and servant, in charge and command of said train, and had control thereof."

The ruling below was right, because: It was for plaintiff, not defendant, to elect who should be sued on a joint liability sounding in tort. When a plaintiff sues both corporate master and individual servant on a liability that appears on the face of his petition to be joint, the cause is not removable to the Federal court, although the master be a nonresident and not a citizen of the State, where, as here, the servant is a resident and citizen of the State. The presence of the resident citizen as a party defendant, carries the case outside of the intendment of the Federal statute.

If there had been a question of fact on Drake's citizenship and residence we might have had a differ-ent question to deal with. So, if the negligence of the servant had been a mere act of nonfeasance instead of one of misfeasance, as it was, there might have been a

252 Mo.—29

different question. So, if the petition had disclosed any other liability against the master and not against the servant.

The question whether a removal should go always harks back to the allegations of plaintiff's statement of his cause of action in his petition. Removability, in that feature of it, becomes a mere question of law, with which it was the duty and right of the State court to deal in the first instance. If the controversy as stated raised a joint liability and was not on the face of the petition separable, an inquiry into the secret motives of plaintiff in joining defendants and seeking a recovery from both, such as defendants here rely on, is of no efficacy in determining either jurisdiction or liability.

So patent is the joint liability in the instant case that if Drake had been acquitted, the corporate defendant would have escaped too, as a matter of law. [McGinnis v. Railroad, 200 Mo. 347.]

The question, long vexed, is one whereon the law may yet be in a fluid or formative state and the last word not spoken. But there is a body of learning in our own reports following the final arbiter in that behalf and sustaining the views just announced. A mere reference to those cases suffices. [Lanning v. Railroad, 196 Mo. l. c. 656 et seq.; Stotler v. Railroad, 200 Mo. l. c. 117 et seq.; Johnson v. Railways, 203 Mo. l. c. 398 et seq.; State ex rel. v. Mosman, 231 Mo. 474—a case in which, on *certiorari*, we quashed an order granting a removal; Schwyhart v. Barrett, 145 Mo. App. l. c. 344 et seq.; State ex rel. v. Dearing, 244 Mo. l. c. 37.]

Those cases were ruled on the authority of decisions delivered by the highest court in the land on Federal questions.

Diligent counsel on both sides have cited us to later decisions in the Supreme Court of the United States, but they do not modify the rulings on which the Lan-

ning, Stotler, Johnson, Mosman and Schwyhart cases were decided. The latest is that in which that court passed on the case of Schwyhart v. Railroad, 145 Mo. App., supra. [227 U. S. 184, 33 Sup. Ct. 250.] In the Schwyhart case the State court denied a petition for removal on the very grounds in judgment in the instant case and that course was approved in the Supreme Court of the United States when taken there on error. Speaking in that case to questions involved here, that court, through Mr. Justice HOLMES, said:

"The joint liability of the defendants under the declaration as amended is a matter of State law, and upon that we shall not attempt to go behind the decision of the highest court of the State before which the question could come. [Southern R. R. Co. v. Miller, 217 U. S. 209, 215, 216.] . . . Again, the motive of the plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right. [Chicago, B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 427; Illinois C. R. R. Co. v. Sheegog, 215 U. S. 308, 316.] Hence, the fact that the company is rich and Barrett poor does not affect the case.

"The remaining justification for the charge of fraudulent intent is that no cause of action was stated against Barrett. That again is a question of State law, and that the plaintiff had such a cause of action in fact must be taken now to be established."

The premises considered, the point is ruled against appellants.

II.  *Of the demurrer (and herein of the mandatory instruction).*

At the close of plaintiff's case in chief, demurrers to the evidence were overruled. But neither of defendants was content to stand on those demurrers. *Contra,* they went on and put in their own proof. In

this condition of things, two apposite and quickening propositions spring at the threshold, thus:

(a)   When that course is taken, a working and primer rule in this ·jurisdiction is this: A defendant uniting the two functions of demurring and then not standing on his demurrer but going on and putting in his own proof thereby in so far forth waives his demurrer that he elects to have the matter judged of by the whole evidence precisely as if on an instruction at the close of the case to direct a verdict.  Hence in this case a .consideration of the instruction to direct a verdict will cover the dual assignment.  [Stauffer v. Railroad, 243 Mo. 1. c. 316; McPherson v. Railroad, 97 Mo. 253.]

(b)   Moreover, back of everything is the guiding rule that where plaintiff has a verdict, as here, then, in ruling a demurrer to the evidence (or a mandatory instruction filling the office of one), appellate courts accept plaintiff's evidence as true whether contradicted or not by defendant's proof (so long as it is not impossible as opposed to the conceded physics of the case, or as beyond all reason or where perjury is patent).   They assume defendant's testimony as false where contradicted by plaintiff's proof.   They leave to the jury to settle the weight due testimony, the credit due witnesses and to reconcile contradictions or smooth away inaccuracies, if any, in the proof.   Withal, they allow to plaintiff the grace of every reasonable inference of fact arising in his favor on any of the substantial proof.   [Stauffer v. Railroad, 243 Mo. 1. c. 316; Cohn v. Kansas City, 108 Mo. 1. c. 392; Wright v. Kansas City, 187 Mo. 1. c. 691; Fritz v. Railroad, 243 Mo. 1. c. 77.]

May not one with propriety (when the yeast of radical novelty is working in judicial dough and one does not know what the loaf to be baked in the oven of events may be), take leave to recur to first principles and observe, to-wit, that the invention of a jury

to weigh and determine the credit due to human testi-
mony, and settle facts in doubt or dispute in a trial
at law, is to be rightly taken as one of the splendid
achievements of civilized man.  While not ideally per-
fect, yet, having been brayed in the mortar of expe-
rience with the pestle of common sense, as human in-
stitutions run, trial by jury has stood the test of use
and justifies itself as indispensable.   No. one but a
sour-complexioned cynic now impugns it, no one but an
inconsistent dreamer suggests a substitute. ''The trial
by jury is the most cherished, if not the most valuable
institution, we have derived from our Saxon ancestors
.  .  . '' [*Per* ORMOND, J., in Swift v. Fitzhugh, 9
Port. (Ala.) l. c. 66-7.]  The average judgment of
twelve jurymen of average sense, drawn, as they are,
from all the walks of life and impartially selected
(''whose learning consists only in what they them-
selves have seen and heard'' and who ''apply their sep-
arate experience of the affairs of life to the facts
proved''), is more likely to. reach a practical result
in sifting, weighing, rejecting, reconciling proof, and
deciding facts than is that of the trained and techni-
cal reasoner or specialist whose mind runs in the
groove of artificial analysis and logic; for peradvent-
ure men do not usually get into trouble through logical
processes and logicians cannot always get them out of
it.

It cannot be said too often that it is that average
reasonable sense of the average jury that courts seek
for and delight in in settling controversies of fact be-
tween man and man.  Agreeable thereto are many
wise and brave words by many wise and grave men,
as the curious may verify by consulting:  Railroad v.
Stout, 17 Wall. l. c. 664; Fetter v. Fidelity & Casualty
Co., 174 Mo. l. c. 266; Jefferson's First Inaugural Ad-
dress, March 4, 1801.  ''The jury are the best doctors
of doubt that we know of.'' [*Per* BLEAKLEY, J., in Cen-
tral Railroad Co. v. Ferguson, 63 Ga. l. c. 85.]   ''It

was because the people knew the judges were poor judges of the facts that they committed their decisions to a jury, and every day's experience confirms the wisdom of their action." [*Per* CALDWELL, J., in Myers v. Railroad, 95 Fed. l. c. 414.] For the sum of the matter consult the eulogy of Brougham, copied into Simpson v. Witte Iron Works Co., 249 Mo. 376, l. c. 408.

The *deference* allowed on appeal to the trial chancellor in an equity case on the facts, when the evidence is oral (Creamer v. Bivert, 214 Mo. l. c. 479 et seq.) transmutes itself into a preclusive prerogative in a jury in a law case, *ex necessitate rei.* So that it has long since passed into a maxim that judges respond to questions of law and juries respond to questions of fact. [*Ad quaestionem,* etc., Coke Litt. 295.]

It is in the light of the foregoing, and not otherwise, that the mandatory instruction must be reviewed.

(c) As it searches the facts, they follow, to-wit:

There is no dispute worth while but that on the 20th day of July, 1905, the corporate defendant ran a freight train in charge of its codefendant Drake, as conductor, from Lathrop to Cameron. It left Lathrop in the shank of the evening and was a "through freight" that did not stop at Turney (an intermediate way-station) and usually did not carry passengers. Plaintiff was a country boy, humbly bred, living in DeKalb county, close to Cameron. He testified, and no one gainsaid it, that he never rode on a train before. He appears to have been about seventeen years of age, a fact determinable by his age of twenty at the trial three years later. There is testimony he had earned as high as thirty dollars a month as a farm hand, but he had been working mostly for his father in the routine labors of farm life. On the said day in July he took a day off for a lark, went to Cameron to see a circus and thence on a train with some comrades to Turney, and thence on to Lathrop. There

is no doubt but that he rode back on Drake's freight train from Lathrop as far as Turney, and that he got off, fell off, or was put off the moving train at Turney on his way back in the nighttime. There is no doubt but that he was seriously injured in broken bones, teeth knocked out and, possibly, in a concussion of the brain or fractured skull, when he got off the train. It would encumber this opinion to set forth the particulars of his injuries or the testimony *pro* and *con* on their permanency, or their effect in the impairment of the motion and use of his right shoulder and arm, or in the impairment of his mind, loss of weight and nervous disorders. This is so because, strange to tell, though the judgment is a heavy one for compensatory (without punitive) damages, yet this anomalous condition exists, viz.: While complaint was made in the motion for a new trial that the verdict was excessive, yet no such point is made in appellants' assignments of error or in their brief or printed argument.

Plaintiff brought three suits on his cause of action. In one of them, instituted over a year after the event, he asked only $1000 actual damages but included another $1000 for smart money. The petition in that case, for obvious reasons, was read into this record by defendants. In the present case, brought three years after the event, he asked $15,000 compensatory damages. Besides the admission made in his former petition, there was evidence tending, if believed, to show that plaintiff's case had *grown* and *improved* with age. All this, however, is, *secundum regulam,* a closed and sealed book on this record.

It is shown that Conductor Drake had authority, as one of his duties, to put off trespassers from his train. It was shown on the issue of his being kicked off or jumping off, that plaintiff from the outset told one unvarying story, namely, that he was kicked off—this from an hour or so after the event, when he got

relief, until his trial. Plaintiff weighed 150 pounds, while 135 was Drake's weight.

The foregoing facts may be taken as undisputed. But on all other vital ones there is irreconcilable dis--agreement.

Omitting details in giving disputed facts and confining ourselves to the tendency of the proof, the case is this:

(*Note*: In the narration of facts following, which plaintiff's testimony tends to prove, the testimony of defendants must be taken as throughout in practically direct conflict with plaintiff's. In fact, as the cold record reads, the countervailing testimony of defendants sharply preponderates and if the jury had believed defendants' instead of plaintiff's, no fault could have been found.)

Plaintiff introduced testimony to prove that on the platform of the depot at Lathrop he asked one of the trainmen if he could ride back to Cameron on the freight train then at the depot; that getting permission he climbed the ladder to the top of a box car and seated himself, his feet projecting over the edge. Whether his feet merely projected or his legs dangled from the knees down is not clear. That shortly after the train started a brakeman came up to plaintiff, and, conversing with him, collected twenty-five cents for his fare to Cameron and then went on to the head of the train; that just as the train got to Turney defendant Drake came out of the cupola of his caboose, approached him with a lantern and with a vile epithet inquired what plaintiff was doing there and thereupon kicked him violently in the small of the back off of the train. In his fall he received the injuries for which he presently sued. *Contra,* testimony from all the brakemen and the conductor went in tending to show that plaintiff was not seen by any one of them to get on, or to be on top of the train during the trip, and that he (or no one else) was kicked off by the con-

ductor or any of the trainmen. Defendants' testimony, if true, also established an *alibi* for Drake, to-wit, that he was not on the top of the train during the trip. Testimony, however, was allowed to go in without objection that Drake afterwards, on being accosted by plaintiff's brother, thus, "My name is Whiteaker. You are the fellow that kicked my brother off down here by Turney," replied: "No, I didn't kick him off; *I pretended like I was going to kick him off and he jumped off,*" or "started at him like I was going to kick him off and he jumped off." Such conversation Drake denies. There was much medical testimony on both sides (as usual, in conflict) but it fills no office on demurrer. So, there was testimony *pro* and *con* on the ability of plaintiff to recognize the conductor, and on how he came to identify him subsequently, and on contradictory statements said to be made by him as to whether it was the conductor that kicked him off or a brakeman, and on the extent and permanency of his injuries, but on demurrer we have nothing to do with those features. One and all they were for the jury. The same may be said of the testimony this way and that on whether plaintiff did or did not intend to stop at Turney in riding back from Lathrop, and whether he had not engaged a room there in which to stop for the night, with one Jackson—the significance of this feature being to show that he voluntarily got off at Turney to meet that engagement, one he admits making, but says he abandoned (which latter Jackson corroborates).

The foregoing is sufficient statement of the tendency of the proof on which to rule the mandatory instruction.

We think it soundly ruled below, this because:

It would be mere ostentatious display of industry and learning to analyze the fourscore cases appellants cite to sustain their contention that the corporate defendant is not liable on the facts of this record, nor

the twoscore that respondent cites to sustain his contention *contra*. This is so because, at bottom, the doctrine of all well-reasoned cases is that, under the maxim *respondeat superior*, the master must answer in certain circumstances for the wrongful act of his servant precisely as the principal must answer for those of his agent. The general rule is that the maxim, *respondeat*, applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, or willfully and maliciously, or even contrary to his orders or criminally, in some instances. That general rule is hornbook doctrine and beyond dispute. The difficulty is in applying it to the circumstances and facts of each particular case; for it would be intolerable to hold the master liable when his servant was pursuing his own ends for his own purposes, and not the master's, and in doing so commits a wrong. The employer of men would be in hard lines if that were the law. Between the two extremes of an obvious case of liability on one side and an obvious one of nonliability on the other, lie many cases close to the border line dividing liability from nonliability.

Both sides have cited cases of that sort from other jurisdictions, but our own cases are rich enough in learning to point the way to a proper disposition of the instant case, and on the authority of those cases we must hold with respondent on the point.

Assuming Drake kicked respondent off the moving train, as we must under the verdict, there is not a particle of testimony tending to show he was acting for himself for private ends or otherwise than about his duties in ridding the train of a trespasser. We pause to ask: Are we to airily suppose that Drake was booting trespassers (unknown to him and with whom he had no personal quarrel) from his master's trains in the nighttime for the mere fun of it? Or like Don Quixote was seeking knightly adventures in righting

wrongs of others, because of a fixed idea of general personal duty to mankind (or love of knightly renown), shading off into melancholia on the edge? Or was a monster of ingrained cruelty with a habit of wreaking his malice on those who stole rides on the freight trains of his codefendant? Such strained and unreasonable views "would make posterity think ill of our understanding," as Lord Chief Justice HOLT once remarked. We would have to have the luck incident to being born with a caul (see David Copperfield) to escape such verdict in such hypothesis.

We will cite a few cases in point, others will be found in the Reporter's headnotes to this opinion. [Garretzen v. Duenckel, 50 Mo. 104, a leading case often cited in this as well as in other jurisdictions; Perkins v. Railroad, 55 Mo. 201; Farber v. Railroad, 116 Mo. 81; Brill v. Eddy, 115 Mo. 596; Haehl v. Railroad, 119 Mo. 325; Farber v. Railroad, 139 Mo. 272.]

Finally, we stress the fact that both sides by instructions submitted to the jury the question whether (1) the conductor kicked plaintiff off the train and (2) whether in so doing he was acting within his employment in the line of duty and about his master's business. Those were issues of fact for the jury, and were found by them for respondent. We have no authority to disturb their finding.

It provokes some interest in this connection to note that on appeal on the point raised on the petition for removal, appellants insist railway company is alone liable and Drake was improperly joined; while on the merits on appeal they insist Drake alone is liable and it is not liable. Is that not facing both ways?

The point is ruled against appellants.

III. *Of improper expert testimony.*

In assigning error in that regard appellants neither in briefs nor argument put their finger on any question or testimony afflicted with any vice. The la-

boring oar on appeal was on them to point out spe-
cific error. Trial courts are presumed to proceed by
right and not by wrong. Their judgments are pre-
sumptively correct, and an appellant had as well take
no appeal to all as to take one and fail to point out
the spot and fact in which error is claimed to lurk.
We have always applied that theory to alleged errors
in giving instructions, ruling on testimony, raising con-
stitutional points and the like. There was no little ex-
pert testimony and we might rule the point against ap-
pellants for failure to specify.

But, being left to our own resources, we have read
that testimony critically and see no error affecting
the merits.

IV.  *Of alleged error in instructions.*

Under this head appellants assign error in two
particulars—one in giving, one in refusing, instruc-
tions.

(a)  The court instructed the jury for respondent
in part as follows:

"1.  The court instructs the jury that if they be-
lieve from the evidence that on the 20th day of July,
1905, plaintiff at or near the station of Lathrop, got
upon a freight train of defendant, the Chicago, Rock
Island & Pacific Railway Company, for the purpose
of being transported from said station to Cameron,
and that defendant Drake was at said time said rail-
way company's conductor and servant on and in charge
of said train; and if you further find from the evidence
that while plaintiff was so on said train at said date,
and while said train was running through or near the
station of Turney, the defendant Drake, as such con-
ductor and servant, while in charge of said train and
in the line of his duties to said railway company, ap-
proached plaintiff and wrongfully and with great and
unusual force and violence kicked, forced and ejected
plaintiff from said train to the ground, whereby he was

injured, then the defendants are liable in this case, and the jury will return a verdict for the plaintiff and against both of the defendants.''

"4. The court instructs the jury that if they find for plaintiff, and against both the defendants, their verdict may be in the following form:

" 'We, the jury, find for plaintiff and against both of the defendants herein and assess his damages at ——dollars.' "

We perceive no error in those instructions, the ones challenged. The point made is that the instruction includes *both* defendants. But if they found the facts hypothesized in instruction number 1, then both defendants were guilty and the court did right in telling the jury to so find. Instruction number 4 followed inevitably as a sequence. It was left, then, to defendants to put any other allowable theory to the jury and this they did, with the consent of the court, in part as follows:

"1. The court instructs the jury that if they shall find from the evidence that the defendant, F. M. Drake, was conductor on the train mentioned in the testimony and that he did not go out upon the top of the cars of said train while the same was going from the station of Lathrop to Cameron, you will find for the defendant, F. M. Drake.

"3. The court instructs the jury that the plaintiff was a trespasser on the train mentioned in the evidence and that the defendants, or either of them, owed him no duty or obligations as a passenger on such train.

"4. If the jury shall find and believe from the evidence that the plaintiff was on said train, intending to alight at the station of Turney, and that he voluntarily alighted from said train while the same was in motion and was injured, you must find for the defendants.

"5. If the jury shall find and believe from the evidence that the plaintiff at or about the time claimed in the petition boarded the train, intending to ride

to the station of Turney, and that when said train failed to stop at said station the plaintiff at or near the north end of said station of Turney voluntarily alighted from said train, you must find for defendants.

"7. The court instructs the jury that if they find from the evidence that the train mentioned in the evidence was a freight train, which, under the rules and directions of the defendant railway company, did not and was not permitted to carry passengers, and that the plaintiff got upon said train without the permission of the conductor thereof, then, in such case, he was not a passenger, but a trespasser on such train, and unless you shall find from the evidence that the conductor, F. M. Drake, the defendant herein, actually did kick the plaintiff from said train while the same was in rapid motion, you must find for both defendants.

"16. If the jury find from the evidence that the train on which the plaintiff was riding was a 'through freight,' not ordinarily carrying passengers and not scheduled to stop at the station of Turney, you should find for the defendant railway company, unless it has been shown to your satisfaction by the evidence that the conductor of such train was required by his duties to said company to put off trespassers found thereon and that in this case the defendant, Drake, did while acting within the scope of his employment kick plaintiff from said train while in motion as mentioned in another instruction."

The jury were not coerced by those instructions to find against both unless both were liable.

(b)    Appellants asked certain instructions which were refused.    They, in some instances, involved the same propositions in instructions already given, in other instances they did not declare the law of the case. We will not reproduce them here.

The point is disallowed to appellants and with such ruling it follows that the judgment should be affirmed.    It is so ordered.

*Graves, Brown, Bond* and *Faris, JJ.,* concur; *Woodson* and *Walker, JJ.,* dissent, *Woodson, J.,* in an opinion filed.

## DISSENTING OPINION.

WOODSON, J.—It is conceded by all parties to this suit, in both oral arguments and printed briefs, that the plaintiff was not a passenger upon the train of defendant at the time of his injury, but was a trespasser pure and simple. In fact, that was the theory upon which the case was tried below, and the circuit court so instructed the jury. Therefore, the appellant owed him no duty as a passenger nor did its agents and servants in charge of the train.

The respondent's evidence tended to show, and if true, he was a trespasser upon the top of appellant's train, and when it reached Turney, he was seated on the top of the car, with his feet hanging over the side; that at that time the conductor of the train climbed up on the top of the car, approached respondent, and with a vile epithet, inquired what he was doing there, and without further ado, violently kicked him off of the top of the car.

I am firmly and unalterably of the opinion that those facts, even conceded to be true, do not render the appellant liable for the injuries thereby inflicted upon the respondent; and my reason for so holding is that the conductor was not acting within the scope of his employment, and therefore the doctrine of *respondeat superior* does not apply.

And with all due respect for the opinion of my learned associate, I am firmly of the opinion that none of the cases cited in the majority opinion or in briefs of respondent so hold.

The case of Garretzen v. Duenckel, 50 Mo. 104, the case upon which all the others are based, while properly decided on the facts of that case, has no earthly application to the facts of the case at bar.

Suppose in that case, instead of Brewer, the clerk in the gun store, who in violation of his principal's orders, while showing the rifle to the customer, loaded it, and while so doing, accidentally discharged the same and shot Garretzen, the plaintiff therein, he had, while showing it to the customer, observed Garretzen passing on the street, had loaded it, stepped to the door, and with a vile epithet had shot him down, would it be supposed the court in that case would have held that Duenckel, the principal, was liable for the injuries so inflicted? I apprehend not; and I dare say that there is not a case to be found in the books which so holds, but there are scores of them holding to the contrary.

Brewer, in that case, would have been a criminal and Duenckel would not have been responsible for the shooting. So in the case at bar, if Drake, the conductor, assaulted respondent in the manner and under the conditions the respondent claims he did, then he was not acting within the scope of his authority, but his acts were those of a criminal and he and not the railroad company should be punished therefor. [Jackson v. St. Louis, Iron Mountain & Southern R. R. Co., 87 Mo. 422, l. c. 430; Stringer v. Missouri Pacific Ry. Co., 96 Mo. l. c. 300; Farber v. Missouri Pacific Ry. Co., 116 Mo. l. c. 93; Walker v. Hannibal & St. Joseph Ry. Co., 121 Mo. 575, l. c. 584.]

Moreover, it should be borne in mind that freight trains are not generally designated or used for the transportation of passengers, but are used in the transportation of dumb brutes and inanimate objects, and not human beings, and under those conditions it cannot and should not be presumed that Drake, the conductor, was acting within the scope of his employment, when he kicked the respondent from the car, especially when, as we all know, it is not only physically possible, but it frequently occurs that an employee like any other human being, while performing his ordinary duties, steps aside momentarily therefrom, and com-

mits some of the most heinous crimes, which were never dreamed of by the principal when he employed him, much less authorized or anticipated that he would commit such an act.

So, if as in the Jackson case, supra, the railroad company was not responsible for the unlawful act of the conductor in accepting a passenger against his will, then how much stronger is the reason for holding that the appellant in this case is not responsible for the unlawful act of Drake in kicking respondent from the train, who was not a passenger, and especially where Drake had no authority whatever to represent the appellant in the transportation of passengers.

I, therefore, dissent from the majority opinion.