HERMAN WOLF, Appellant, v. TERMINAL RAILROAD ASSOCIATION.

Division One, June 2, 1920.

1. **NEGLIGENCE: Liability of Master for Servant's Act: Scope of Employment.** To bind the master for injuries to a third party it is necessary that the acts of the servant, whose intervention brought about the injury, pertained, at the time, to the duties of his employment.

2. ———: ———: ———: **Unloading Furniture: Switchman As Helper.** Plaintiff, a furniture mover, placed his wagon on the team way, south of the railroad track on which stood a car loaded with furniture; when the south door was opened, he discovered that the car had been loaded from the north door, and that some of the crates on that side would have to be moved before those next to the south door could be loosened and taken out; he thereupon opened the north door, and placed two crates upon a "gondola" or flat car, which stood on the track just north of the furniture car; after he had partly filled the wagon from the south door, he went to the gondola car and was in the act of removing the two crates when defendant's switchman appeared and announced that he was going to move the car, to which plaintiff replied that he would immediately remove the two crates, and as he was attempting to remove one of them the switchman said he would show him an easier and faster way, and removed some pins which

held up the end gate and as he and plaintiff let down the crate on this end gate it fell and injured plaintiff. *Held*, that the switchman was under no obligation to aid plaintiff in removing the crate and owed him no duty to await its removal before moving the gondola car, and was not at the time of the attempted removal engaged in duties which pertained to his employment, and the railroad company is not liable in damages for plaintiff's injury.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Brownrigg, Mason & Allman* for appellant.

It appeared from defendant's own evidence in the cause, as well as from plaintiff's evidence, that it was necessary for defendant's switchmen to move the car from which plaintiff and his helper were in the act of removing the furniture which they had temporarily placed there. Defendant's witness testified that "the stuff had to be out of there before we could move the car." Therefore, in assisting the plaintiff to remove the furniture from the car and in turning in the end gate of the car for that purpose, defendant's switchman was doing something the natural effect of which was to expedite his own work which he was employed to do. It was clearly an act done by defendant's employee in virtue of his employment and in furtherance of its ends, and is deemed by the law to be an act done within the scope of the employment, for the negligent doing of which the master is legally responsible to any one injured thereby. Hinkle v. Ry. Co., 199 S. W. 227; Green v. Standard Oil Co., 199 S. W. 747; Maniaci v. Express Co., 182 S. W. 981; Whiteaker v. Railroad, 252 Mo. 438; Chandler v. Gloyd, 217 Mo. 415; Garretson v. Duenckel, 50 Mo. 104; Compher v. Telephone Co., 127 Mo App. 553; Haehl v. Wabash Ry. Co., 119 Mo. 325; Felhauer v. Quincy, 117 S. W. 797; Hellriegel v. Dunham, 179 S. W. 763.

*J. L. Howell* and *W. M. Hezel* for respondent.

The instruction in the nature of a demurrer to the evidence was properly given: (1) Because the plaintiff failed to prove, as alleged in the petition (a) That the employees of the defendant assured the plaintiff that the end gate was all right and that he might safely unload the furniture over the same; (b) that defendant's employees directed the plaintiff and his helper to unload the furniture by sliding the same over the end gate while it was in the position in which it remained when the switchman opened it, namely, not all the way down; and (c) because defendant's employees were not acting within the scope of their employment. (2) Because it was not shown that defendant's employees were negligent. (3) Because plaintiff was guilty of contributory negligence.

BLAIR, P. J.—This is an appeal from an order overruling a motion to set aside an involuntary nonsuit taken by appellant in an action he brought for damages he alleged he received when a tail gate or end gate in one of respondent's cars fell upon his feet while he was moving a piece of furniture out of the car.

Appellant testified he was a furniture mover in the employ of Lammert Furniture Company, and was sent, with a helper, to remove the furniture from one of respondent's box cars which stood upon a track in its yards; the team track was on the south side of the car; when the south car door was opened it was disclosed that the furniture car had been loaded from the other side and some of the furniture on that side would have to be moved before the crates next to the south door could be loosened and taken out; appellant's helper opened the north door of the car, and he and appellant lifted two crates of furniture out of that door and placed them on a gondola or flat car which stood immediately north of the furniture car on a track par-

allel to that on which the furniture car stood; this enabled appellant and his helper to "loosen up" other crates in the furniture car so they could load their wagon at the south door; this they did, but left room on the wagon for the two crates they had transferred to the gondola car; they then went to the gondola car and were about to unload from it the two crates they had placed upon it, when one of respondent's switching crews came up, and one of them said: "We are going to cut out those cars." Appellant replied: "All right, we have got two crates in there and we will take them out and put them on the end gate of my wagon," and then lifted the lighter crate over the side of the car and "slid it down" the side to the ground; one of the switching crew then said: "Wait a minute, I'll show you an easier and faster way than that; you won't have to leave it off that end," and he then pulled some pins or hooks out of the end of the car and "kicked it over and let this end down, but they didn't come all the way," and the switchman then stepped upon the end and on into the car, and said: "That is as far as it will go; let's go in and throw it over ;"this car end or tail gate was as wide as the car and as high as its sides (3½ or 4 feet), about three inches thick, and iron-bound; the gate was not down on the car floor but lacked about twelve or eighteen inches of it; appellant saw it was lying at an angle; he and his helper and one of the switchmen then "tipped" a two hundred pound crated table over on this gate; appellant stood very near to it; when the weight of the table came upon the gate it fell and injured appellant; no one made any investigation to see whether the door would go down nearer the floor; appellant had never seen one of these tail gates put down before; it was "just a gate on hinges" which "folded" to the inside of the car to which it was attached.

Appellant contends the act of the switchman was within the scope of his employment and was negligent. Respondent contends otherwise, and also insists appellant was guilty of negligence as a matter of law.

The fact that the act was done during the time of the servant's employment is not conclusive, nor is the motive of the servant so. The question is, was the act done by virtue of the employment and in furtherance of the master's business? [Hinkle v. Railroad, 199 S. W. 227.] "Whose business was being done and whose general purposes were being promoted?" [Maniaci v. Express Co., 182 S. W. 981.] Was the servant acting in the line of his employment, about his master's business and seeking to accomplish his master's purpose? [Whiteaker v. Railroad, 252 Mo. 438.] These and other cases cited by appellant announce the general rule as heretofore expressed in this State, but the facts of the cited cases are not such as to shed much light upon the question whether the rule is applicable to the facts of this case; and that is the only question the briefs present in this connection.

It is not contended the switchmen were charged with any general duty relating to the unloading of cars. Appellant's contention is that the evidence tended to show that they undertook to aid him in order to hasten the accomplishment of their purpose, and duty, to take out a car which stood back of the gondola car upon which he and his helper had placed the two crates of furniture, in the unloading of which the injury was inflicted. Appellant placed the crates upon the gondola car without authority and at his own risk. The switchmen were under no obligation to aid him in their removal and owed him no duty to wait for their removal before moving out the car they sought at the time. They were free to proceed with their switching and allow appellant to wait until they returned the gondola car before removing the crates therefrom. The presence of the crates constituted no obstacle to the switching operations. In this situation they determined to *delay* the master's business until appellant could accomplish his purpose of removing the crates. They were in fact not performing their work in so doing, but were merely accommodating appellant. The effect of this was not the furtherance

of the master's business, but the temporary suspension of it for the accommodation of appellant. It is true, after the switching crew suspended their operation to await appellant's removal of the crates from the gondola car, that the quicker the crates were removed the quicker the crew could resume the master's business; but the fact that they did temporarily suspend the performance of that business for appellant's benefit makes it clear that the switchmen were not *at the time,* and in the act done, serving the master, but had stepped aside therefrom, and their acts in aiding appellant were, therefore, not acts for which the master was responsible. [1 Thompson on Negligence, sec. 526; 1 Shearman & Redfield on Negligence, sec. 147.] To bind the master it was necessary that the acts "pertain to the duties of the employment." [Snyder v. Railroad, 60 Mo. 413; Walker v. Railroad, 121 Mo. 575.]

This disposes of the case and other questions need not be discussed. The judgment is affirmed. All concur, except *Woodson, J.,* absent.