NONA G. PRIEST, RESPONDENT, v. F. W. WOOLWORTH FIVE AND TEN CENT STORE, A CORPORATION, APPELLANT.—62 S. W. (2d) 926.

Springfield Court of Appeals. August 19, 1933.

*Henson & Woody* for appellant.

*Phillips & Phillips* and *L. K. Tedrick* for respondent.

BAILEY, J.—This is an action to recover damages for alleged injuries charged to have been the result of an assault upon plaintiff by the assistant manager of defendant in its store located in Poplar Bluff, Missouri. On trial to a jury plaintiff recovered a judgment in the sum of $3000 actual damages and defendant has appealed.

One of the errors assigned is that the trial court refused an instruction in the nature of a demurrer to the evidence offered at the close of the whole case. Looking to the evidence we find the facts most favorable to plaintiff to be substantially as follows: At the time of the accident which occurred on the 11th day of June, 1932, plaintiff was about twenty-three years of age and unmarried. Defendant corporation conducted a five and ten cent store in Poplar Bluff and had in its employ at the time as assistant manager of the store a young man named Hollis George, about nineteen years of age. Plaintiff entered the store of defendant in the evening of the day of the accident for the avowed purpose of making a purchase. Plaintiff testified that she was standing at a counter trying on some hats; that, "Mr. George came up, took me by the shoulders and bent me back over the counter. He bent me back until my feet was clear off the floor and the back of my head was on top of the counter. When I started to raise up, I said, 'Oh, let me up, you are hurting me,' and he bent me back again. When he finally let me up I told him my back felt like it was broke, and I said, 'I was going to spend twenty cents, but I am not going to spend anything now,' and I went out. I went in to buy something. This was about 7:30 on Saturday night. They close Saturday nights about 10 o'clock. I don't know how high the counter is, it hit me about the waist line, that is, the piece of glass sticking up on the edge of the counter. This glass is used to separate the merchandise and keep it from falling off. He bent me back twice. Had no conversation with him before that time, did not know he was there, did not see him until he had bent me back on the counter. I had never been out with him or had any dates. Was a good friend to the bookkeeper, and saw him in the store. One time before that he grabbed me by the arm when I was talking to the bookkeeper and another time as I was going out of the store. All without my consent. This glass stuck up about four inches above the counter."

On cross-examination she testified as follows:

"Defendant's store is about a block from the place where I worked at the time. I had a habit of going to defendant's store and the bookkeeper, Mrs. Stewart, and I would go home together, living in the same part of town. It was not my habit all the time to go into the store as a customer. Sometimes when I was in there I would see

Mr. George, and sometimes not. We were not well acquainted. He was of a smart nature. After he had grabbed me by the arm and twisted it, I would not speak to him when I saw him. I do not think he was mad at me; I think he was just smart. I do not know that he wanted to injure me. I have seen him cutting up with girls in the store.''

Mary Priest, a sister-in-law of plaintiff, testified that she saw the accident; that Mr. George took hold of plaintiff's shoulders and bent her back over the counter until her head touched and that she told him to let her up that he was hurting her; that he let her up and walked away; that he was supervisor over the salesmen and would act as salesman himself at times; that Mr. George was rather a jolly sort and that there was nothing to indicate he was ''mad'' at the time but the act was done in a kind of ''playfulness.''

Hollis George, a witness for defendant, testified on cross-examination as follows:

''I was assistant manager at the time. I do not know why I was back at the counter where plaintiff was on that occasion; just happened to come up. I did not know that she was going to make a purchase; did not see anything in her hands. I do not know whether she had on a hat or not at the time. I had gotten acquainted with her about four months before that time. I never went out with her. When I took hold of her she had her back to the counter. The counter is about 26 inches from the floor and the glass stuck up about 2½ inches. I just pushed her back, bent her back over the counter. I do not believe her head touched the counter; I would not say that it did not. I know her feet did not come up off the floor, for I was standing right in front of her and would have felt them if they had. She did not say that I was hurting her. I know some one was there when I walked up, but I do not know who it was. They were laughing and talking. Do not remember anything she said at the time. There was no purpose in taking hold of her hands and pushing her back; did it in a kidding and joking manner. I am not in a habit of doing what I did then. I weigh about 180, and about six feet tall. The counter is 36, instead of 26 inches. That is the actual measurement.''

The foregoing is substantially all the evidence in the case as to the circumstances under which the accident occurred. Defendant urges that the act of George Hollis complained of, was without the scope of his employment, had no connection with the business of his principal and that therefore defendant is not liable for the consequences thereof. In support of that proposition defendant's industrious counsel cite some thirty-two cases. Plaintiff's learned counsel, with even more industry, have cited something over fifty cases developing a contrary theory. The facts in the case are quite

simple and it would seem the law involved would be equally so, and well settled, although, needless to say, cases of this particular kind are indeed quite rare. We have read the cases cited but deem it unnecessary to review those cases. Plaintiff cites a large number of railroad cases wherein it is held that the carrier is under duty to treat its passengers respectfully and to protect them from violence or insults by its servants. [Farber v. Mo. Pacific R. R. Co., 116 Mo. 81, 1. c. 91, 22 S. W. 631; O'Donnel v. Transit Co., 107 Mo. App. 34, 80 S. W. 315; Keen v. Railroad, 129 Mo. App. 301, etc., 108 S. W. 1125.]

Our Supreme Court has specifically held that the rule applied to common carriers of passengers, who owe a special duty to the public, is without application to a store keeper. [Smothers v. Welch & Co. House Furnishing, 274 S. W. 678, 310 Mo. 144.]

It is there stated that, "A merchant owes to his customer, who comes upon his premises by invitation, the duty of using ordinary care to keep the premises in a reasonably safe condition for use by the customer in the usual way; and this doubtless includes the duty of using ordinary care to employ competent and law-abiding servants. But this is the extent of his duty; he is not an insurer of his customer's safety. [Cases cited.]"

One of the leading cases upon the question of the liability of the master for the misconduct of the servant is that of Haehl v. Wabash R. R. Co., 119 Mo. 325, 24 S. W. 737, wherein the Supreme Court of this State makes a clear and lucid statement of the general principal of law involved in this case, as follows: "The principle of *respondeat superior* applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such cases whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has, and can have, no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed then the wrong is the purely personal wrong of the servant for which he, and he alone, is responsible." [Haehl v. The Wabash R. R. Co., 119 Mo. 1. c. 339.]

Our courts have never departed from the authority of that case. The difficulty is only in applying this well recognized principle of law to each particular case.

In the case at bar the evidence clearly shows the act of Mr. George in bending plaintiff back over the counter had nothing whatever to do with his employment. It was no more in line with his duties as assistant manager or clerk than was the act of the servant in the Smothers case, supra, in attempting to ravish a customer, for which act our Supreme Court held there was no liability on the part of the employer or storekeeper. Plaintiff in this case had committed no act demanding that George should use any violence toward her. She was simply a customer with a perfect right to be there. George, in an act of clowning or buffoonery, committed the assault. He was performing no duty for his employer. He was giving vent to his own whim or pleasure of the moment which had nothing whatever to do with his employment. Under such circumstances we think there was no question for the jury, and that the trial court should have directed a verdict for defendant. [State v. Trimble, 41 S. W. (2d) 801, l. c. 805, 328 Mo. 760.]

Under the view we take of the case other alleged errors in the giving of instructions and as to the excessiveness of the verdict need not be considered.

There was some evidence in this case that George was notoriously guilty of similar acts of "playfulness" prior to the time of this accident. We think if there is any basis of liability in this case it must be on the theory suggested in plaintiff's brief and in the Smothers case, supra, i. e., failure of defendant to exercise ordinary care in employing a proper servant. For that reason we think the case should be reversed and remanded for such further action as plaintiff may deem fit and proper. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.