### ELDER v. DIXIE GREYHOUND LINES, Inc.
#### No. 13322.

Circuit Court of Appeals, Eighth Circuit.
Dec. 4, 1946.

Homer Hall, of St. Louis, Mo., for appellant.

Roscoe Anderson, of St. Louis, Mo. (Joseph C. Miller, Cullen Coil, and Anderson, Gilbert, Wolfort, Allen & Bierman, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

Plaintiff brought this action in the state court to recover damages for personal injuries he sustained in consequence of an assault and battery committed upon him August 6, 1944, about twenty-five miles south of St. Louis, Missouri, on United States Highway No. 61, by one Ernest Cameron, a bus driver in the employ of the defendant Dixie Greyhound Lines, Inc. Plaintiff alleged that Cameron's acts were wrongful and tortious and that he committed them in the performance of the duties of his employment to aid and assist in the protection of the interests of defendant as his employer, and plaintiff prayed for actual and also for punitive damages against the employer in amounts exceeding $3,000. The defendant denied responsibility for the acts attributed to Cameron. There was diversity of citizenship, and on removal a trial was had to the court and jury in the federal court. At the conclusion of the plaintiff's evidence the defendant moved the court to direct a verdict for defendant on the ground that "there is no evidence that in striking and assaulting the plaintiff the driver Cameron was acting within the scope of his employment for the defendant but, on the contrary, plaintiff's evidence shows that at the time of the alleged assault the driver Cameron was acting on his own behalf and on his own business or interest." On the argument of the motion the court clearly indicated its conclusion that the motion should be sustained, but before the direction was given to the jury counsel for plaintiff stated, "I apprehend that Your Honor feels that the motion for a directed verdict probably would be the appropriate order." Counsel thereupon "in view of that situation" requested "the privilege to take a non suit without prejudice," and also requested "the privilege of dismissing this suit without prejudice." The requests were denied and the jury, under the court's direction, returned its verdict for defendant and judgment of dismissal at plaintiff's costs was entered. Motion for new trial was overruled and the plaintiff has taken this appeal.

The record discloses that on the evening of August 6, 1944, the plaintiff was employed as a bus driver for St. Louis-Cape Bus Line, driving a bus loaded with about thirty five passengers from Cape Girardeau to St. Louis over Highway No. 61, and Cameron, under his employment by defendant, was driving a Dixie Greyhound bus with passengers between the same points, in the same direction, over the same route. The drivers were not acquainted with each other, but along the road Cameron attempted to drive the Dixie Greyhound bus in his charge past the bus in plaintiff's charge but was prevented from passing by the movement of plaintiff's bus into the lane ahead of Cameron. After several attempts, Cameron succeeded in passing the plaintiff, but after the passing had been accomplished Cameron, instead of proceeding on his way to St. Louis, "cut in and squeezed [the plaintiff] over on the shoulder [of the highway]" and brought the Dixie Greyhound bus to a stop on the highway, causing the plaintiff to bring the bus in his charge to a stop on the shoulder and close to the edge of the fifteen to eighteen foot embankment on which the road was laid. When stopped there was from eight to fifteen feet of space between the front of plaintiff's bus and the tail end of the Dixie Greyhound bus. Both drivers alighted, walked towards each other and met in the space between the busses. According to the testimony of plaintiff he did not approach Cameron to quarrel or fight, but he asked Cameron what was the matter, and Cameron without preliminary, said to plaintiff, "You smart son of a b——," and struck him in the face. Plaintiff attempted to defend himself but did not strike Cameron, and in the melee both were carried over the edge of the embankment and rolled down into a barbed wire fence. There Cameron ceased his aggression, restored

plaintiff's cap to him and said, "This is your cap, we had better get out of here, we are both fired." "I have a government man on my bus, we will both be fired." Plaintiff said, "What about me? What are you going to do about my clothing and the condition I am in?" Cameron said, "Well we will get into St. Louis. I will take care of you." The drivers then returned to their respective busses and Cameron drove on into St. Louis. Plaintiff got help from his passengers in pinning up his torn garments and then he also drove on into St. Louis. The plaintiff suffered cuts and abrasion and damage to his clothing and also humiliation in the presence of his passengers and of the public at the terminal in St. Louis.

■ It is clear and conceded that the question whether or not the Dixie Greyhound company could be held liable on the facts shown for the tortious assault and battery committed by its employee upon the plaintiff under the doctrine of respondeat superior was governed by the law of Missouri where the tort was committed. The trial court recognized that it was required under Missouri decisions to consider the evidence in the light most favorable to plaintiff and to accord to the plaintiff the benefit of all inferences which could reasonably be drawn in his favor upon the testimony adduced. But it was of the opinion that there was no evidence from which it could reasonably be inferred that the acts of Cameron which occasioned damage to the plaintiff were done by Cameron in furtherance of any business of the Dixie Greyhound company or with any intent or purpose on Cameron's part to promote the interests of his employer. The court observed that the interference which the plaintiff had caused to the progress of the Dixie Greyhound bus to St. Louis occurred and was terminated before the busses were brought to a stop and before the fight occurred. The court said, "If he [Cameron] had done any act in getting around that bus and anybody had been injured as a result of it, certainly the Greyhound Line would be liable for it." But when "he drove in front and stopped his bus and went back for the purpose of engaging in controversy he was completely outside of the scope of his employment." It appeared to the court that there was no evidence from which it could reasonably be inferred that Cameron's tortious acts, committed after he had succeeded in passing by the plaintiff, had any relation to the operation of the Greyhound bus over the remaining part of the route to St. Louis. As to that part of the route the court observed that Cameron "was already out in front," and to counsel's suggestion that plaintiff might later again get in front and interfere, the court indicated that was dealing in realms of speculation. The court was of the opinion that the decisions in Missouri ("the majority of them") were against the right of the plaintiff to go to the jury, and ruled accordingly.

■ On this appeal the numerous decisions of the courts of Missouri establishing and defining the doctrine of respondeat superior in tort cases in that state have been cited and considered. The parties present no dispute as to general principles governing the question of the master's liability for torts of his servant and the limits to such liability. But hardly any one of the many cases passed on is exactly like another, and the duty of the federal trial court in such a case as this is to compare the proof in the case before it with that in the authoritative analogous cases which have been passed on in the state, and to follow the state law in its decision.

The Missouri cases most stressed here to support the judgment are: Milazzo v. Kansas City Gas Co., Mo.Sup., 180 S.W.2d 1; Rohrmoser v. Household Finance Corp., 231 Mo.App. 1188, 86 S.W.2d 103; Morgan v. Kroger Grocery & Baking Co., 348 Mo. 542, 154 S.W.2d 44; State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801; Wolf v. Terminal R. Association, 282 Mo. 559, 222 S.W. 114; Evans v. Sears, Roebuck & Co., Mo.App., 129 S.W.2d 53.

Milazzo v. Kansas City Gas Company was a suit for damages, compensatory and punitive, for personal injuries in which it appeared an assault was made upon the plaintiff in the action by one Kreeger, an employee of the defendant hired to read gas meters. He entered plaintiff's premises

for .the purpose of going to the basement to read the gas meter and the plaintiff started conversation about the size of the gas bills. The employee, in response, cursed the plaintiff and continued on to the basement where he apparently read the meter. When he came back the plaintiff wanted to know from him the meaning of his insult and ordered him not to come into the place of business again, to which Kreeger replied in vile language and added that if plaintiff would come from behind the counter he would show him something. Plaintiff came from behind the counter. His testimony was that he thought he could get some information since Kreeger had a book in his hands. He said he did not go out to fight but merely went to see what Kreeger had to show him. Kreeger then committed an assault upon the plaintiff, picked up his hat and after some further words took his departure. The Supreme Court of Missouri held that a demurrer to the evidence should have been sustained. We quote from the court's opinion, 180 S.W.2d loc. cit. 3:

"If, from a most favorable view of the whole evidence, giving plaintiff the benefit of every reasonable inference in his favor, it appears beyond any reasonable controversy that the assault and its purpose had no connection with Kreeger's duties to defendant, and that the assault was not intended or made to accomplish or promote the defendant's business intrusted to Kreeger, but was Kreeger's independent business, then defendant is not liable and the demurrer to the evidence should have been sustained."

The court, in discussing whether Kreeger, the employee of the defendant, was acting within the scope of his employment, and whether the plaintiff had made a submissible case for the jury, stated, 180 S.W. 2d loc.cit. 6:

"Was Kreeger acting in the course of his employment and within the scope of his authority in making the assault upon plaintiff? Kreeger's duty was to read the meters and turn the readings into defendant's office at the close of each day. It was his duty further to answer customer's questions concerning the readings and, when requested, to show customers how to read the meters or give them the readings. He was not in the discharge of any of these duties, nor was he seeking to promote any of them by the assault upon plaintiff. When Kreeger entered the store he had been questioned and had answered in an ugly manner, but his answer is not the basis of this action. He went down the steps to the basement and proceeded with his business of reading the meters. Plaintiff, on the other hand, waited for Kreeger to return. When Kreeger was passing out through the store, plaintiff did not inquire further about the readings of the meters, nor about his wife's gas bill. Such matters were not up for discussion. Plaintiff was interested only in Kreeger's prior remarks. A controversy developed, not concerning the business of defendant intrusted to Kreeger, but concerning Kreeger's insulting remarks to plaintiff.

"What was the purpose of the assault? Whose business was Kreeger endeavoring to promote when he assaulted plaintiff? There was no evidence from which it could be inferred that Kreeger, at the time of making the assault upon plaintiff, was endeavoring to accomplish any of the work the defendant had intrusted to him. There was no evidence from which it could be inferred that Kreeger in assaulting plaintiff was acting within the expressed, apparent or implied scope of his authority as a meter reader. The words spoken by Kreeger and the fact that he had his book in his hand and his flashlight in his pocket were insufficient for that purpose. The words used were not accompanied by any attempt to exhibit the book to plaintiff, nor were they preceded by any discussion of or request for the readings taken. The words used must be considered along with what Kreeger did and the circumstances under which he spoke and acted. State ex rel. Gosselin v. Trimble, supra, 328 Mo. 760, 768, 41 S.W.2d 801; Gosselin v. Yellow Cab Co., supra, Mo.App., 29 S.W.2d 186, 188. The assault was not merely a wrongful manner or mode of trying to carry out the master's business, because there was no evidence that it was made on behalf of

the master or that its purpose was to discharge any duty delegated to Kreeger.

\* \* \* \* \* \*

"We think the evidence is wholly insufficient to show that Kreeger was acting in the course of his employment and within the scope of his authority when he assaulted the plaintiff. State ex rel. Gosselin v. Trimble, supra; Collette v. Rebori, supra [107 Mo.App. 711, 82 S.W. 552]; Grattan v. Suedmeyer, 144 Mo.App. 719, 724, 129 S.W. 1038; Priest v. F. W. Woolworth Five & Ten Cent Store, 228 Mo.App. 23, 62 S.W.2d 926. The evidence, as a matter of law, shows a marked and decisive departure from the master's business. Accordingly, plaintiff failed to make a case for the jury and the court erred in granting plaintiff a new trial regardless of error, if any, in the giving of instruction 'G'."

The court in the opinion quoted from reviews many of the Missouri cases and undoubtedly reflects the Missouri law upon a state of facts having some analogy with the facts to which the federal court was required to apply the law in the case at bar. It is true, as urged for the plaintiff, that the facts were not identical. But in both cases angry passions, culminating in violent assault, arose while the employees were engaged in their master's work and were engendered in connection with the work. In the case quoted from, the employee apparently went on after the fight to read other gas meters for his company. In this case, after the fight Cameron went on with his job of driving the bus towards and into St. Louis. But the basis of the court's decision in the Milazzo case, and the principle of law there applied, was that under such circumstances as appeared in the case the only reasonable conclusion to be drawn was that the employee at the time he made an assault upon the plaintiff in the case was not attempting to accomplish any of his employer's business and was not acting within the apparent or implied scope of his authority and the assault constituted a departure from the employer's business for which no liability could be imposed upon the employer under Missouri law.

State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801, involved an action for damages for an assault committed upon the plaintiff in the action by one Daggett, a cab driver in the employ of the defendant. It appeared that the plaintiff, a cab driver, in attempting to stop his cab close up to the cab of defendant in Daggett's charge, then standing in front of a hotel, skidded and collided slightly with the standing car. The plaintiff let his passengers out and collected the fare. Whereupon Daggett came over and struck the plaintiff in the face. There was testimony that as Daggett came over to the plaintiff's cab, he said, "Get that car off of mine." After the assault both cars left the scene at about the same time. There was no evidence from which it could be inferred that the position of plaintiff's car interfered with the forward movement of defendant's cab. At the close of plaintiff's evidence the trial court directed a verdict for the defendant. The plaintiff appealed to the Court of Appeals which affirmed the judgment, Gosselin v. Yellow Cab Co., 29 S.W.2d 186, and the Supreme Court in its decision refused to disturb the opinion of the Court of Appeals. The Supreme Court's opinion was (328 Mo. page 805, 41 S.W.2d 805) that "defendants' demurrer to relator's evidence was properly sustained because the assault was not shown to be incident to any attempt upon [Daggett's] part to do his master's business, but was a mere reaction to sudden anger after the slight collision had occurred and was all over."

Again in this case quoted from, it is apparent that the facts passed on by the Missouri Supreme Court were not identical with those before the trial court in this case, but we think both the cases from which we have quoted afforded helpful analogies and that the trial court could properly give weight to their teachings in reaching his decision as to the sufficiency of the plaintiff's evidence to take the case at bar to the jury. If the Missouri law to be applied is doubtful (and it is debated here), the cases quoted from present a substantial basis for the trial court's determination that under the Missouri law

the plaintiff in this action did not make out a submissible case against defendant. Such determination of doubtful state law by the federal district court within the state, which has substantial support in authoritative state court decisions, may not be held to be erroneous or reversed in this court without clear showing that the state law has been changed by subsequent decision or that the controlling decisions in the state have not been followed. Central Nebraska Public Power & Irrigation District v. Tobin Quarries, Inc., 8 Cir., 157 F.2d 482; Michigan Fire & Marine Ins. Co. v. National Surety Corp., 8 Cir., 156 F.2d 329, 333; Magill v. Travelers' Ins. Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Association v. Chamberlin, 8 Cir., 148 F.2d 206, 208; Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Globe Indemnity Co. v. Wolcott & Lincoln, Inc., 8 Cir., 152 F.2d 545, 547; Reitz v. Mealey, 314 U.S. 33, 39, 62 S.Ct. 24, 86 L.Ed. 21; Anderson-Tully Co. v. Murphree, 8 Cir., 153 F.2d 874; Best v. Crown Drug Co., 8 Cir., 154 F.2d 736; McGregor v. State Mutual Life Assurance Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 864; Helvering v. Stuart, 317 U.S. 154, 163, 63 S.Ct. 140, 87 L.Ed. 154.

■ We have considered, but deem it unnecessary to discuss, the other very numerous Missouri decisions on respondeat superior that have been cited to us. We do not find any which on similar facts directly support the plaintiff's claim of right to go to the jury in the case at bar. The permissible determination of the state law by the District court must be sustained.

On the argument of defendant's motion to dismiss his action the plaintiff invoked the Missouri statute which prescribes penalties against a person driving a vehicle on the highway for leaving the scene of an accident due to his culpability "or to accident," without giving his name and other particulars to the injured party or to a police officer. Section 8401, Rev.St. Mo.1939, Mo.R.S.A. He advanced the theory that the jury might infer that Cameron left his bus and went back to the plaintiff in order to comply with the duties imposed by that statute or duties to his company arising out of an accident such as reporting upon it. Plaintiff relied on the evidence that the bus which plaintiff was driving "was forced off the highway and half of it on the shoulder and within a foot and a half of the edge of the embankment." But the trial court held that there was no evidence of any accident in the case. There was no evidence that plaintiff's bus was upset or in any danger. It was standing safely on the shoulder and so far as appears, drove on without any difficulty. There was also no evidence that anyone present thought there was an accident. We consider the point to be without merit.

■ Appellant complains of the refusal of the trial court to permit him to dismiss his action without prejudice. It is plain from the record that no such request was made on plaintiff's behalf until after the court had heard argument and had clearly indicated to plaintiff's understanding its conclusion that the plaintiff's evidence showed that the assault complained of was committed by Cameron on his own behalf and outside the scope of his employment by defendant and that defendant could not be held liable. No indication was given that plaintiff had any expectation or reason to expect that on another trial he could prove any different state of facts against defendant or that there were any facts or circumstances on account of which the court might, in the exercise of discretion, permit a non suit or dismissal without prejudice. The requests to dismiss were merely interruptions of the court as it was proceeding to make the order and direction to the jury upon which it had indicated its determination. We think the refusal to permit dismissal without prejudice in the situation presented was without error. Boaz v. Mutual Life Insurance Co. of New York, 8 Cir., 146 F.2d 321; International Shoe Co. v. Cool, 8 Cir., 154 F.2d 778; Spies v. Union Pacific R. Co., 8 Cir., 250 F. 434, 435.

Affirmed.