Johnnie GARCIA, individually and as next friend of Suzanne Garcia; Yolanda Torrez, individually and as next friend of Reggie Aispuro a/k/a Reggie Torrez, and Beverly Baca; and Flora Garcia, Plaintiffs-Appellees,

v.

SAM TANKSLEY TRUCKING, INC., Defendant-Appellant,

John Carlton Truesdell and Sharon Truesdell, Defendants.

No. 81–1208.

United States Court of Appeals, Tenth Circuit.

May 26, 1983.

---

John S. Catron and W. Anthony Sawtell of Catron, Catron & Sawtell, Santa Fe, N.M., for defendant-appellant.

William N. Henderson of Atkinson & Kelsey, P.A., and Leon Taylor, Albuquerque, N.M., for plaintiffs-appellees.

Before HOLLOWAY, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Sam Tanksley Trucking, Inc. (Tanksley) appeals from a jury verdict awarding $45,000 to plaintiffs for damages resulting from a collision between their automobile and one of Tanksley's tractor-trailer trucks. On appeal, Tanksley asserts that its employee-driver, John Truesdell, was acting outside the scope of his employment as a matter of law at the time of the incident. Tanksley also claims the jury was substantially prejudiced by improper remarks of plaintiffs' counsel during closing argument. We disagree with Tanksley's contentions and affirm the decision below.

The incident occurred near Williams, Arizona on August 27, 1977. Truesdell was operating a Tanksley-owned truck, and plaintiff Flora Garcia was driving the car in which the other plaintiffs to this action were riding. Both vehicles were traveling east on a four-lane highway. As the highway gradually narrowed into two lanes, Flora Garcia accelerated her automobile in order to pass the truck while four lanes remained. This apparently angered Truesdell, who made several disparaging remarks over his citizen's band radio. Although no one in the car responded immediately, an altercation ensued further along the journey after plaintiffs stopped for gas and again overtook and passed Truesdell. Subsequent to some mutual name-calling, Truesdell began to follow the Garcia car at a high rate of speed. Flora Garcia finally pulled over behind a slow moving car as a self-protective strategy. Truesdell then stated over his radio that he would teach the plaintiffs a lesson they would never forget. Shortly thereafter plaintiffs' vehicle was hit in the side by the Tanksley truck. Flora Garcia managed to pull the car off the highway, where its occupants emerged and began flagging down passing motorists for help. Truesdell left the scene. After a police investigation, he was taken into custody and charged with assault with a deadly weapon.

Plaintiffs brought this diversity action for compensatory and punitive damages resulting from personal injuries sustained in

the collision, naming as defendants Tanksley, John Truesdell, and Sharon Truesdell, who was also a Tanksley employee and was riding in the Tanksley truck at the time the incident occurred. The Truesdells never made an appearance. Default judgments were awarded to plaintiffs against the Truesdells, and to Tanksley against the Truesdells on a cross-claim. The action between plaintiffs and Tanksley proceeded to trial by jury, where the plaintiffs were awarded a total of $45,000. Tanksley's motions for directed verdict, judgment notwithstanding the verdict, and new trial were denied by the trial judge.

## I.

Tanksley asserts on appeal that when Truesdell hit the plaintiffs' car, he had deviated from the scope of his employment to such a degree that Tanksley should not be held vicariously liable. Tanksley contends that the collision constituted an assault and battery by Truesdell against the plaintiffs, whether his act was intentional or merely a scare tactic accidentally carried out.

To support its proposition that Truesdell's actions were a substantial deviation from his course of employment, Tanksley refers us to a line of cases wherein assaults committed by servants whose employment did not foreseeably involve the use of force were held to be outside the scope of their employment. *See Birch & Sons v. Martin,* 244 F.2d 556 (9th Cir.), *cert. denied,* 335 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 49 (1957); *Elder v. Dixie Greyhound Lines,* 158 F.2d 200 (8th Cir.1946); *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81 (Ct.App.1946); *Miera v. George,* 55 N.M. 535, 237 P.2d 102 (1951). Tanksley also points to *Childers v. Southern Pacific,* 20 N.M. 366, 149 P. 307 (1915), where an assault by a railroad watchman was held to be within the scope of his employment because the watchman's duties included preventing the stealing of rides, a duty which the court concluded anticipated the use of force. We are not persuaded by these cases that an assault by an employee whose work does not ordinarily involve the use of force

is automatically outside the scope of employment.

In both *Elder* and *Wood,* bus drivers committed assaults after stopping and alighting from their buses. In each case the court viewed the departure from the bus as a personal venture and a substantial deviation from the driver's employment. Here we are concerned with a truck driver who was physically engaged in the activity he was hired to perform when the incident occurred. Truesdell had neither stopped nor descended from the truck. Moreover, the truck itself, furnished by Tanksley in direct relationship to Truesdell's employment, was the instrumentality of plaintiffs' harm. *Birch & Sons* may also be distinguished because, among other reasons, the employees there were off duty.

In *Miera,* 237 P.2d 102, an assault was committed by a garage mechanic on a customer. In defining the assault as outside the scope of employment, the New Mexico Supreme Court noted that the relationship between the defendant oil company and the mechanic was that of lessor-lessee, and that the company had only authorized its lessee to act as a liaison between former oil company customers and the company, never contemplating the use of force. 237 P.2d at 106. However, *Miera* also recognized that whether an employment is likely to lead to the use of force is a question to be decided on the facts of each individual case. *Id.* 237 P.2d at 105 (quoting Restatement of Agency, § 245 comment a (1933)).

Under New Mexico law, the question whether an act is so different from authorized activity that it falls outside the scope of employment is one to be decided by the jury unless the answer is clear as a matter of law. *Scott v. McWood Corp.,* 82 N.M. 776, 487 P.2d 478, 481 (1971); Restatement (Second) of Agency § 228 comment d (1958). The trial court was correct in denying Tanksley's motions because there was no wholly independent departure from Truesdell's course of employment, nor any departure which either indicated utter abandonment of the employment or which

retained no reasonable connection with it, so as to absolve Tanksley as a matter of law. *Massey v. Beacon Supply Company,* 70 N.M. 149, 371 P.2d 798, 803 (1962). The jury could reasonably have found that altercations between drivers are foreseeable, and that the conduct in this case was not outside the course of Truesdell's employment.

## II.

Tanksley's second allegation of error is the failure of the trial judge to grant a new trial, on the ground of improper closing argument by plaintiffs' counsel. Early in plaintiffs' closing argument, Tanksley objected to the following statements:

"First of all, let's look at the contending forces here, who are the plaintiffs and who are the defendants. On the plaintiffs' side, we have a poor family who works here in Albuquerque. They make a meager living. They have children and they were in an automobile, minding their own business, and going on a trip and coming back. On the other side, you have a giant corporation, a trucking company, that has three hundred trucks on the road through thirty-six states."

Rec., vol. III, at 172. The judge ruled this was proper argument. Thereafter, counsel for plaintiffs again referred to the size of Tanksley's operations and also alluded to Tanksley's "making capital gains and wealth and lucre." *Id.* at 211.

■ Reference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument. *See United States v. Stahl,* 616 F.2d 30, 33 (2d Cir.1980); *Draper v. Airco, Inc.,* 580 F.2d 91, 95 (3d Cir.1978); *Eisenhauer v. Burger,* 431 F.2d 833, 837 (6th Cir.1970). In *United States v. Socony Vacuum Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940), the Supreme Court held appeals to class prejudice to be highly improper and urged trial courts to be alert to prevent such discourse.

■ Counsel for plaintiffs clearly overstepped the bounds of proper argument by attempting to contrast Tanksley's wealth with plaintiffs' poverty. Nevertheless, because of the absence of prejudice, we do not believe reversal is required. *Socony* stands for the proposition that each case must turn on its own set of facts to determine whether a jury has been prejudiced. *Id.* at 240, 60 S.Ct. at 852. In that case, the defendants were referred to as "influential, wealthy millionaires" and "malefactors of great wealth." *Id.* at 237–38, 60 S.Ct. at 851. The Court found no prejudicial error for several reasons, among them the fact that the statements were minor aberrations and "not cumulative evidence of a proceeding dominated by passion and prejudice." *Id.* at 240, 60 S.Ct. at 852. The record before us is similar. We do not find other errors in the proceeding to compound the improper remarks made during closing argument.

With regard to the size of Tanksley Trucking, the record shows that evidence of the number of terminals Tanksley operated throughout the country was first offered by one of defendant's witnesses. This same witness was permitted without objection to respond to plaintiffs' questions about the number of trucks and drivers Tanksley utilized. Consequently, plaintiffs' closing argument did not prejudice the jury by informing it of Tanksley's size; the jury was already aware of that fact from the evidence. Moreover, Tanksley met the issue of prejudice head-on at the beginning of its own closing argument by telling the jury that the verdict was not to be based on the size of defendant corporation, and by reading Jury Instruction Number Twenty, which instructed the jurors that corporations are entitled to the same fair and unprejudiced treatment as individuals. This instruction was later given to the jury by the trial judge, along with an instruction that neither closing argument nor remarks of counsel were to be considered as evidence. No other special instructions or exceptions were requested by Tanksley.

A final manifestation of absence of jury prejudice is the size of the verdict. Appellate cases that reverse for improper refer-

ence to wealth, poverty, or corporate power often involve a large or excessive verdict, an indication itself of prejudice. *See generally, City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 759 (6th Cir.1980); *Koufakis v. Carvel,* 425 F.2d 892, 901–02 (2d Cir.1970). The $45,000 award plaintiffs received is far from excessive in light of the evidence, and in fact could have been a good deal higher without reflecting prejudice. The combination of the foregoing facts leads us to conclude that prejudicial error warranting a new trial did not occur.

AFFIRMED.